for the Ninth Circuit is now in session. Good morning. Aloha. Welcome to the Ninth Circuit. Along with my colleagues, Judge O'Scanlan and Judge Paez, we are here to have oral argument in one case, Horizon Christian School v. Governor Kate Brown. There are 15 minutes aside. And counsel for the appellant, whenever you are ready, please begin. Thank you, Your Honors. My name is John Kempf, and I represent the appellants. They are Christian schools in Oregon and the parents of some students that were shut down for about a year, most of 2020, because of Governor Brown's absence. Why don't you hold on one second? Maybe we can turn down the mic just a little bit. Do I do that? No. Well, I would have no idea. By the way, thank you to Ms. Dodds for the way she got us all oriented how today would work, including no masks, I assume? That's fine. Okay. Okay. Why don't we put 15 minutes back? We'll just let you start over. And if I could, Ms. Dodds, if you would remind me and stop me so I would get five minutes of rebuttal, please? It should be on the clock, but you'll need to keep track of your own time. But I can remind you when you're at five. Thank you. So, Judge, Your Honors, what I was saying, John Kempf and I represent the appellants, and they were closed down for most of 2020. And this is important because Governor Brown admits she feared a mass exodus from her public schools and the loss of money if religious schools that could safely reopen were allowed to do that. So she said, we're not going to let it happen. And this law from this court and the Supreme Court is very clear that an intentional violation of religious rights, that violates a clearly established right and that we're entitled to nominal damages for that as a matter of law. When you talk, though, about intentional violation, don't we simply look at whether, say, for qualified immunity purposes, whether the law was clearly established and the subjective motivation of the actor for qualified immunity purposes doesn't make any difference? It's we look at the objective test, and if the law is clearly established and it's a violation, then we proceed. But if the law isn't clearly established, it doesn't matter what the subjective motivation of the actor is. Isn't that right? Your Honor, it's correct. It's an objective test. And remember, this is a Rule 12 appeal where everything the plaintiffs have alleged in the First Amendment complaint is the truth for purposes of the appeal. We allege that she intentionally discriminated against our religious beliefs and that she intentionally discriminated against us because of our religious beliefs relating to this, frankly, outrageous mass exodus concern. I mean, you know, Judge O'Scann. But did the governor actually say that? What? Did the governor say that? Her economic policy advisor, Ms. Leah Horner, said this. This is in the record at page 50. She said publicly and at a meeting for county commissioners, she was asked by a county commissioner, why can't religious schools reopen when they're ready to do that safely? Ms. Horner, economic money advisor, said, no, Governor Brown fears a mass exodus from her public schools if she does that. Counsel, may I ask you, where in your brief did you develop this argument? Oh, it's a big part. It's in the opening brief, the reply brief, and again, in the appellate record at 50, is the mass exodus statement. And it was developed in the trial court. And Judge Mossman said, look, they admit it. You've got it. You've got your statement that they fear the mass exodus. Well, wait a minute, Judge. I read the transcript. And Judge Mossman didn't quite say that, did he? He said that if, in fact, the schools are closed again, and after the argument was held during a time when the schools had reopened, but if, in fact, the schools are closed again, that he would, at that time, issue an order. Isn't that correct? Yes, but that focuses on injunctive relief. I was first, respectfully, Your Honor, focusing on the nominal damages, which the George case from this Court says we get as a matter of law if there's a constitutional violation. And it is undisputed in this record that that was Governor Brown's policy and the mass exodus. But, again, I'm having trouble understanding why that matters, what Governor Brown's motivation was. If the law was not clearly established at the time she issued the executive orders that issue here, putting aside you named her in her official capacity only, but let's get past that. If the law wasn't clearly established at the time she issued the challenged EOs that this was a constitutional violation, what does it matter what her subjective motivation was? If the law wasn't clearly established that these violated the Constitution, she's entitled to qualified immunity. Your Honor, I would reject the premise respectfully. Under the Jones case that we cite in our briefing and the Flores case, both from this Court, they hold that if a state actor acts intentionally in taking away a constitutional right, then that is, as a matter of law, something that violates a clearly established right. Sorry, isn't that supposed holding in Flores? Wasn't that vitiated in Harlow v. Fitzgerald in 1982? And don't we only look at the objective test and it doesn't matter what the subjective motivation of the actor is? Yes. We only look at the objective test and what is true in this Rule 12 appeal is that objectively she intentionally discriminated against religious schools. When Governor Brown issued the order, the ban, I guess, was that Executive Order 2029? 20-20 was the first order. That instituted the ban on classroom instruction? Yes. Okay. What was the law at that time? The law at that time. What are you relying on? Yes, I'm relying on. What law did she violate when she did that? What clearly established law? The clearly established law is from the Jones case from this Court in my brief and the Flores case from my brief that holds that when you intentionally discriminate, that is a violation of someone's constitutional rights when you do it intentionally and also when you feed forward. What were the constitutional rights that she violated when she issued that order closing down the schools? It wasn't just the order as we allege in our complaint with the intentional discrimination. She conceded in this record. She had closed all the schools, but then when the religious schools, we can safely reopen and we have First Amendment rights that also matter. It's not just her power. We have rights. And she said, no, because I don't want a mass exodus. So you're complaining about her failure to reopen the schools? Is that what the heart of your claim is about? The heart of my claim is that for all of 2020, immediately when I filed the lawsuit in March of 2020 and I asked for an immediate injunction, it should have been granted at that time because she violated clearly established rights that existed at that time under the Jones and Flores cases that already existed, and that's half of the case. The other half are the nominal damages. But don't you have to come back to the fundamental question of what is the constitutional right at hand? How would you define it? It is. And are you relying, for example, on Pierce v. Society of Sisters and Meyer v. Nebraska, those cases? Thank you, Judge Liz Candland. It is the fundamental religious right, and it must be accepted as true for Rule 12, that we must gather communally to teach our children at our Christian schools, communally, in person. But that's a contention, isn't it? We don't have to accept your interpretation of the law. We can certainly entertain it, but I'm still at a loss to pinpoint where precisely the constitutional right you are invoking appears and where it has been upheld. It is, in the record, the First Amendment complaint at pages of our record 51 to 75. No, no, that's the allegation. I'm talking about what authority can you invoke to establish that precise right? It is the First Amendment to the United States Constitution as recognized two years ago by the Supreme Court in the Roman Catholic Diocese of Brooklyn v. Cuomo and in Tandon v. Newsom, that religious entities have the right to gather in person. But isn't the question here whether, in the time of the coronavirus pandemic, that private schools can be closed temporarily during an emergency? And isn't the question whether the right to not have that happen was clearly established at the time Governor Brown issued her executive orders? I don't think anybody is quarreling with the fact that there is a right to practice one's religion and a right to teach one's children the tenets of one's religion. The question is, was the right clearly established to do that in the face of the coronavirus pandemic? And I submit that it was in part because of Masterpiece's cake shop from the Supreme Court in 2018, where the court said you have to balance the competing interests. She doesn't have an automatic weapon. You're shut down and that's the end of it. My client, to Judge O'Scanlan's question, has a First Amendment right to gather communally under Diocese of Brooklyn and Tandon, and she took that away because of her mass exodus concern. Masterpiece says you've got to balance. She didn't balance at all. It's disputed that she said, no, I don't want a mass exodus. The religious schools are closed. Did you cite Masterpiece in your opening brief? Yes. Well, not if in my opening. I know it's in either the opening or reply. Because I couldn't find it. It is in either my opening or my reply. I cited Masterpiece for that exact point, that you've got to have a weighing of the interests, First Amendment versus public safety. Counsel, I'm looking at page 6 and even the bottom of page 5, and it doesn't appear. It should be between Kentucky and May versus Northrop, and it's not listed. Well, I am sorry if it's not in the table of authorities. If you were to give me 24 hours, Judge O'Scanlan, I would send all of the judges a letter pointing to where that is because I know it is. I just read the brief this morning. But, counsel, even if it were there, we have been instructed by the Supreme Court of the United States time and time again, we shouldn't determine constitutional rights for qualified immunity purposes based on general principles. We need similar types of factual situations to guide the decision-makers and us. And whatever relevance Masterpiece Cakeshop has, it certainly doesn't involve anything to do with a pandemic. I just meant that you had to have weighing when you're talking about the concerns. It's public safety versus religious freedom. And on your good point, Judge Bennett, about what clearly established rights, in our brief, we have three cases that are important about religious freedom. One, Brewster. Two, Jones. Three, Williams. And those cases talk about you can't intentionally take away someone's religious freedom. And in the Williams case involving the prisoner, he was Muslim and he didn't want to eat pork, they said you cannot make someone, this is the key word, forego, you can't make someone forego their religious freedom rights. You can't do that. And that was clearly established. That case is like 20 years old. So, counsel, you're at about three and a half minutes. But if my colleagues have no other questions at this time, if you want to reserve the rest of your time, we'll still give you five minutes for your rebuttal. Okay. So I should sit down and I have five more minutes? Unless my colleagues have questions. But you'll get five minutes anyway, even if they do. I don't have any questions. All right. We'll give you five minutes for your rebuttal, counsel. Okay. Thank you, Your Honor. You're welcome. Thank you, and may it please the Court and counsel, my name is Michael Casper, and I'm here on behalf of Governor Brown. I guess I want to just take a step back from counsel's focusing right now on the idea that there was an intentional deprivation. I do want to take a step back to what I understood to be the core argument here, which is whether or not the claim that the governor's closures of schools was unconstitutional under the line of cases that came out, including Roman Catholic diocese and Tandon, and whether that claim is moot. So first of all, I think the district court correctly decided that it was moot, and correctly decided that any claim for nominal damages was dismissed under sovereign immunity. As for the mootness claim, I think that Brock provides the guidance for that, and this Court, as this panel knows, decided in Brock that California's school closures was moot and didn't meet the voluntary You're talking about Brock 2. Sorry, yes, I am talking about Brock 2. In your opinion. I'm sorry. You're right. I'm talking about Brock 2. So it goes en banc, and this Court decided that it is moot because it doesn't meet the voluntary cessation exception nor the capable repetition but evading review. And I would submit that all the reasons that Brock was moot apply with equal force here. But Brock only applied to the claim for declaratory and injunctive relief. There was no claim for damages, either actual or nominal, in Brock. That was it. So if you apply Brock here, the only thing that's really moot is the claim for injunctive and declaratory relief. And we conceded as much. I think the claim for, well, he's got, in the prayer for relief here, there's a claim for nominal and actual damages. Correct. So that's, you know, I gather that's why counsel focused on nominal damages because that's still alive. I think that's right. And that gets us into qualified immunity and everything else. And it does. And we concede that that part of the case is not moot. But I just want to make sure I'm covering all the bases. And I don't know what exactly, you know, what's concerning the panel the most. And I know, Judge Paez, for example, that you dissented in Brock. Yes. And my understanding there was that one of the reasons that you dissented and one of the reasons that the First Circuit and the Fourth Circuit have decided cases are moot is when the governor has actually ended the declaration of an emergency. And that happened here six months ago. Yes. I understand. Even under my theory in Brock, it's moot. Right. It's moot. I assume we can take judicial notice because that's not in the record. Of the end of the state of emergency? I did file a memorandum of additional authorities that should be in the record. So while we're on the record. That's Executive Order 22-03. Right. Yeah. It was in April of 2022 that the. Effective April. Effective April 1. Yes. Yeah. Speaking of the record, I did want to. Counsel was saying that he had cited Masterpiece Cake Shop and he did. That does appear in his reply brief. So I just wanted to make sure that that was on the record. So, OK. So maybe we'll move on past the mootness issue and we should get to. But still, we've got the qualified immunity question. But before you even get to qualified immunity, I think we get to sovereign immunity. And the governor has sovereign immunity against any claim for nominal damages. And. In her official capacity. Right. And so the question is. And the question then is qualified immunity. Sovereign immunity doesn't help her if she were sued in her individual capacity. Correct. And so then the question is, was she sued in her individual capacity? And she was not. And the district court so found. And the reason she was not. I mean, the complaint says. The complaint makes it very clear. Very clear. Explicitly says twice that she's being sued in her official capacity only. And not only that. At a hearing on a, I think it was a preliminary injunctive hearing. Well, no. Let me scratch that. It was a hearing on the state had moved to dismiss one state law claim. There was a state law constitutional claim. Which the district court would have probably had supplemental jurisdiction over. Because it's arising out of the same facts. If she had been sued in her personal capacity. But it would be barred by an 11th amendment. If she had been sued in her official capacity. Because, you know, as a matter of federal law. The 11th amendment bans or prohibits suits against under state law. For violations of state law. Even injunctive relief. So, sorry. This is a long way of saying. At this hearing on the state's motion to dismiss the state law claim. Judge Mossman specifically asked. In order to know how to rule on this. You are, ask counsel, you are bringing this claim in her official capacity only, correct? Answer, yes, that's correct. On that basis then, Judge Mossman actually dismissed the state law claim. So, I mean, it's not only is it stated twice in the complaint. It was relied upon. So then why did you, when you filed an answer, why did you then raise qualified immunity? You know, I think that any lawyer with their salt is going to, I mean, they're going to. If there's a damages claim. Even if it's barred by sovereign immunity. Just as a backup argument. I don't know, I don't have any better answer than that. Just like throw it out there. So, counsel, let's say we were hypothetically going to take up the issue of qualified immunity on the merits. So if we were going to do that, what is the date in the state's view, Governor Brown's view that we should look to here as to the clearly established law date. Based on the claims that plaintiffs have made. What date do we look at in this case to decide whether the law was clearly established in evaluating the merits of qualified immunity? What date do you want us to pick? Well, I mean, ideally, I'd like you to pick the date when she adopted executive order 2029, which is in July, I believe, of 2020. However, I would say it ought not matter. Because while I readily admit there's probably at least three or four Supreme Court justices who would definitely say it's unconstitutional, there's no precedent on school closures as yet. And in fact, in the Sixth Circuit where this has been litigated, there was originally Danville Christian, a panel of the Sixth Circuit said school closures don't fall under this line of Supreme Court cases. And then there was Mon, I'm going to mess up the name. There was another panel in the Sixth Circuit that said, no, we think this is controlled by Tandon. This is just the same as the gathering cases. So let me say that back. The clearly established precedent, I think, is that laws that prohibit gathering in church, a number of people can be in a church, a number of people can be worshipping, that law is clearly established. And the law being Tandon's rule that if you want to determine whether or not a restriction on the size of a gathering is not just within this realm, narrow realm, but all sorts of restrictions. What I have in looking at Tandon and Catholic dioceses is that they come after. They're down the line. Yeah, they were in late November. When we think of qualified immunity, we look at what the law was at the time the official took the alleged wrongful action. And that's why Judge Bennett was focusing on the date. Right. Because when the governor enacted Executive Order 2029, there was really nothing. Yeah, and I'm sorry. And as you move down the line, law begins to develop. So it's important to consider, if we're going to look at Tandon and we're going to look at Catholic dioceses, we need to know what was the action at that time that the governor should have been aware of, what was the state of things at that time that the governor either failed to act or acted in violation of those cases. Right. No, I agree, and I'm sorry. My first answer is that if you look when 2029 was enacted, that was long before. Yes. So in that sense, it's an easy question. But I guess all I wanted to say was as a sort of a backup argument, even if you look at, even frankly today, there's no clearly established precedent on school closures. And the Sixth Circuit, for example, what my point was, has even today gone back and forth on this. They've got a panel saying, yes, it's controlled by Tandon, and another one saying schools are sui generis and the risk that schools pose. And there are good arguments as to why, like, K through 12 schools pose sui generis risks. And so it's just, it's not an obvious question. It's not the kind of thing that would give rise to, I mean, it would still be protected by qualified immunity today, I think, but it certainly was protected by qualified immunity when 2029 was adopted. And it certainly was, even if you go all the way up until the time that the governor said, this is a bad idea, I want schools to reopen, which was at the very end of 2020. Certainly by then, it's not, even by then, it's not a foregone conclusion that Tandon controls that, you know, because you have to move. Tandon is in this line of cases about gatherings. It's not absolutely clear, although, like, as I said, I would concede that it's a difficult question. But, Judge Paez, you're right. I mean, I think the fundamental question is you ought to be looking at when 2029 was adopted and certainly by there, qualified immunity would cover. The only other thing I would, I guess I would want to say is I don't actually think you get to qualified, you need to get to qualified immunity because, as I said, sovereign immunity controls. The district court also denied the motion for leave to amend the complaint to file a third amended. That's exactly right. And so what he said was it would be futile because she's entitled to qualified immunity. Right. And that's sort of where the qualified immunity does come in. And so this court has to decide whether or not that ruling was an abuse of discretion. And I think to the extent, if you look at the record, I mean, ordinarily, that's sort of an abuse of discretion review standard, but the district court's pretty clear here that it's relying on futility, which is I think a question that this court does review as a matter of law. So you can look at whether or not it's futile, but again, it clearly would have been futile because clearly qualified immunity protected the governor when she adopted 2029. So it was not an abuse of discretion. And even on the, I don't know if I want to get bogged down in this, but even on the sort of broader or different question about whether there was an intentional discrimination claim to the extent that there is this sort of separate claim, that was not, that was even, that wouldn't have survived a motion to dismiss because there just was no evidence. But even assuming that what this person who was a policy advisor said during the course of a phone call, even assuming she said what they said, she said, it doesn't give rise to it. It's not enough to get to a discrimination claim. But even above and beyond that, the record actually. Because? Because? Oh, I'm sorry. Because all that was said on this phone call was somebody asked, when are private schools going to be, why are you not opening private schools? It wasn't religious schools. It was private schools versus public schools. And this person said, there's a concern about a mass exodus from public schools. So even on its face, if that's all that there is, I don't think that that's enough to kind of, under Iqbal, to get away from a motion to dismiss, it has to be some plausible claim. I don't think it plausibly gets you to the governor back in, you know, when she adopted this executive order was doing it out of religious animus. It's just the number of inferences one would have to make is too much. But, I mean, not only that, I mean, council has said a couple times that it's undisputed that the governor, this was the governor's policy. That is not accurate. It's very disputed. She wasn't, we actually filed a declaration saying she wasn't, she said I wasn't speaking for the governor. We filed a declaration from the state epidemiologist saying we didn't do this. Here's why we did it, health reasons. We filed, we deposed the state education policy director who said this is not animus. We did this for health reasons. So on that record, certainly there's not enough here to survive a motion, sorry, summary judgment. And the district court can see that and say this is futile, right? So futility also arises if a district court can say that this is not going to survive summary judgment. And so to the extent that the intentional tort issue is out there, the district court correctly concluded that that was futile as well. Unless the court has any other questions, we would ask that you affirm. Thank you. Thank you, counsel. Your Honors, may I just briefly clear up a few things. One, as a matter of law, this case is not moot because the Supreme Court last year in the Yusak Bunim case said that when a party requests, some Christian school students in that case, when you request nominal damages, as a matter of law, the case is not moot. And this court recently in the Best Supplement Guide just a few weeks ago reached the same holding. And we request nominal damages here. There's no doubt about that. And, Judge Paez, that's the exact holding that you reached in the Porter case, nominal damages. It is not moot. You have a live controversy. Now, may I move to the course of proceedings where, because the weakest part of my case, absolutely, is that I said Governor Brown in her official capacity only. But one thing that's important, if I can shore that up, is that you'll notice she's the only defendant. Only her. Not the State. Just her. And on the course of proceedings, what counsel didn't mention, I ask you to please look at page 33 of our excerpt of record. Page 33 at the district court. The trial lawyer for Governor Brown said, you know, we did put in a qualified immunity as a defense because we wanted some clarity about whether Governor Brown was liable for, quote, nominal damages. They specifically thought about it. It wasn't just a perfunctory, we dropped it in. They admitted on the record that they did it specifically because they had a concern about nominal damages. Again, that's the record at 33, so it's actual knowledge that occurred here. Now, if I could, Your Honor, I checked. I cited Masterpiece Cake Shop on pages 8 and 11 of the reply. Pages 8 and 11 of the reply. I cited Masterpiece Cake Shop for the point of, please balance our First Amendment rights along with the public safety rights. Counsel. I appreciate your clarifying that, but you did not cite it in the opening brief. It was in the reply, and I'm sorry. That's fine. Page 8 and 11 of the reply. My fault. Judge O'Scanlan. Fine. That's fine. Okay. And what I wanted to point out, again, is the big picture. As Judge Justice Kavanaugh said during the oral argument of Uzug Bunim, he said, look, isn't what's really going on here? They withdrew their request for injunctive relief. So he said, look, but if you do get nominal damages, then you get attorney fees, don't you? Absolutely. And I want to be candid about that. I've worked extremely hard on this case, just about seven days a week for two years, and the public policy of this court in Kelly v. Wengler says, look, you should lean in our favor, especially on a Rule 12, and say that we prevail to, quote, induce attorneys like me in the local community so they'll uphold religious freedom rights and the rights of everybody in Oregon not to have their schools closed down because an apparently anti-religious governor says, no, I'm not going to do that because then I'll lose money for my schools. I don't want a mass exodus. So I want to be candid about that, and I want to say that I'm not embarrassed because that is the public policy. Justice Kavanaugh just recognized that. And from the big picture, you might chuckle, but I would like to get paid for all the hard work, and I'm hoping, putting aside all of our law degrees, that everyone will say, you know what? What she did was outrageous. To do that and to keep schools closed for all of 2020 just about because she doesn't want to lose money, it's undisputed in the record. She admits it caused a lot of emotional problems for kids. They lost learning. And she did that on purpose. That's the clearly established right, not to do this on purpose to hurt religious freedom. And so would that apply to private schools in general or just the religious schools? I am focusing on my clients and the parents of students solely at religious schools. And if I could briefly, Your Honor, he said, oh, you know, we do dispute this or that. Again, this is Rule 12 where you take everything that I alleged in the First Amendment complaint as true about intentional discrimination. And when Judge O'Scanlan said, well, what is the right? Well, it's the First Amendment right of my schools to communally meet and teach their children in person. That is undisputed for this Rule 12 record. And he said, oh, we filed a declaration of this or that. No, this is Rule 12, please, where you take everything that I say as true. And then one thing I learned is sometimes don't forget, John, to tell the court simply what you respectfully want. And what I want, please, is a reversal. I would like a ruling that we are entitled to nominal damages as a matter of law, so that summary judgment motion should have been granted. I would please respectfully request a legal ruling that this case is not moot because we request nominal damages. That's the holding of the Supreme Court in Uzugbunum. And because she has not made it, quote, absolutely clear, the absolutely clear standard that she won't close religious schools again, it's also not moot for adjunctive relief purposes. I think we have your argument, counsel. Thank you. And, Your Honors, thanks to all three of you for requesting the oral argument. And have a safe trip and everything. We thank counsel for their arguments. The case just argued will be and is submitted. And with that, we are adjourned. Thank you.
judges: O'SCANNLAIN, PAEZ, BENNETT